**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAY -8 2023

Clerk, U S District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO.: 23-119 (ABJ) |
| v. | MAGISTRATE NO. 22-MJ-258 |
| JAMES "MAC" MCNAMARA, | 18 U.S.C. § 111(a)(1) – Assault |
| Defendant. | |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, JAMES "MAC" MCNAMARA, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint

5-2-23
M

1

session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the

crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.8 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *McNAMARA's Participation in the January 6, 2021 Capitol Riot*

8. On January 5, 2021, McNAMARA traveled from his residence in Illinois to Washington, D.C. to attend the "Stop the Steal" rally and election-related events occurring on January 6, 2021.

9. On January 6, 2021, McNAMARA attended the rally in Washington, D.C. with an acquaintance and then walked to the U.S. Capitol complex with a crowd of people.

10. When McNAMARA arrived at the U.S. Capitol on January 6, 2021, a large crowd had assembled on the grounds surrounding the U.S. Capitol building. McNAMARA observed that the building was closed to the public and law enforcement officers were actively attempting to keep the crowd from entering the building.



11. McNAMARA ascended to the West Terrace of the U.S. Capitol grounds and proceeded to the North doors to the U.S. Capitol building, which were closed. He observed a crowd attempting to gain access to the building through the North doors.

12. At approximately 3:13 p.m., McNAMARA observed protestors being forcibly removed from the U.S. Capitol building through the North doors by law enforcement officers. As protestors were being pushed out, McNAMARA ascended the stairs outside of the North doors and lunged toward the officers, who were removing protestors out of the building. McNAMARA swung his arms with a clinched fist at D.C. Metropolitan Police Department Officer G.P.

13. After the protestors were pushed out of the building, the officers then attempted to close the outer set of two doors to the North doors while protestors were actively attempting to hold them open. When officers managed to close one of the doors, McNAMARA picked up a bike rack that was laying near the entryway and began ramming it into the closed door. McNAMARA rammed the door with the bike rack at least four times while officers were still actively attempting to close the other outer door that protestors had managed to keep open. A short time later, officers had closed both doors to the set of outer North doors.

14. A few minutes later, protestors were able to pull open one of the doors to the set of two outer North doors and were actively attempting to remove the door from its hinges or otherwise damage it. About a minute later, protestors were able to pull the other door open. Shortly after, McNAMARA entered a vestibule area between the set of two outer doors and two inner doors. Officers were visible standing behind the set of inner doors. Officers shot McNAMARA with rubber bullets to remove him from the vestibule area. As officers made their way to the set of outer doors, they deployed pepper spray toward McNAMARA, who was sprayed in the face. McNAMARA then walked away from the North doors.



15.     MCNAMARA knowingly and voluntarily admits to all the elements of 18 U.S.C. § 231, including that MCNAMARA committed or attempted to commit an act to obstruct, impede, or interfere with one or more law enforcement officers carrying out their duties.

16.     MCNAMARA also knowingly and voluntarily admits to all the elements of 18 U.S.C. § 111(a). Specifically, defendant admits that he forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of their official duties. Specifically, the defendant admits that he knowingly and intentionally lunged toward D.C. Metropolitan Police Department Officer G.P. The defendant further admits that he knew at that time of the assault of the officer that G.P. was engaged in the performance of his official duties or that he assaulted G.P. on account of their performance of their official duties.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/ Andrew J. Tessman
        Andrew J. Tessman
        Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, JAMES "MAC" MCNAMARA, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 4-4-23

JAMES "MAC" MCNAMARA
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 4-4-23

~~Thomas Breen~~ Christopher Dallas
Attorney for Defendant